IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| E.Q. *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY *et. al*,<br><br>　　　　Defendants. | Case No.: 1:25-cv-00791 |

**PLAINTIFF E.Q.'S <u>EMERGENCY</u> MOTION TO ALTER THE JUNE 12, 2025 MEMORANDUM DENYING HIS STAY OF REMOVAL WITH SUPPORTING POINTS AND AUTHORITIES**

**(Plaintiff E.Q. Faces Removal to Danger as Early as June 30, 2025)[1]**

---

[1] Defendants have agreed not to remove E.Q. prior to June 30, 2025. *See* ECF No. 34. Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel conferred with Defendants' counsel for their position on this motion. In response, they stated, "Defendants oppose the motion because the IJ decision notes that it was served on Mr. E.Q. on February 25, 2025. Additionally, at the hearing, page 40 of the transcript demonstrates that the Court already knew what was in the first affirmance form, and submitting that affirmance now would not make a difference."

Pursuant to Fed. R. Civ. P. 59(e), Plaintiff E.Q. respectfully seeks modification of the Court's June 12, 2025, Memorandum Opinion and Order ("Opinion," Dkt. No. 35), which denied E.Q.'s May 13, 2025, motion for a stay of removal ("Motion," Dkt. No. 25). Modification is warranted because the Government has now produced previously unavailable evidence consisting of E.Q.'s February 25, 2025, Immigration Judge decision ("February IJ Decision").

## INTRODUCTION

The Opinion addressed an incomplete evidentiary record, which did not include the February IJ Decision ordering E.Q.'s removal. As detailed below, the government declined to produce the February IJ Decision despite repeated written requests from E.Q.'s counsel. Defendants also failed to provide this Court with a copy of the February IJ Decision when filing their "Certified Administrative Record of E.Q.'s Credible Fear Review Proceedings" (Dkt. No. 26).[2] It was not until June 10, 2025, after the underlying motion was fully briefed and argued, and less than 48 hours before this Court issued the Opinion, that the government finally provided E.Q.'s counsel with a copy of the February IJ Decision. As detailed below, this Court should exercise its authority under Fed. R. Civ. P. 59(e) to modify the Opinion because the February IJ Decision demonstrates that E.Q. has standing to assert his claims.

In this action, E.Q. challenges Defendants' unlawful implementation of the Mandatory Bars Rule[3] in a credible fear process that included an asylum officer's February 4, 2025, negative credible-fear decision and the subsequent February IJ Decision. E.Q. contends that these decisions ordered his removal based on an unlawful determination that he might be subject to security-risk

---

[2] Despite Defendants' representations in their statement in opposition to this motion, E.Q. has indicated that he never received a copy of the IJ decision from February 25, 2025. And even if it had been served to him by mail, neither he nor counsel had possession of the document prior to the hearing on E.Q.'s stay motion. *See* Dec. of Colleen Cowgill ("Cowgill Dec.") at ¶ 3.

[3] The Court's Opinion (at 5-6) contains a succinct summary of the Mandatory Bars Rule, which E.Q. incorporates here by reference.

and terrorist bars.

On May 13, 2025, E.Q. filed the Motion to stay his removal under both the traditional *Nken* stay factors and the All Writs Act (28 U.S.C. § 1651(a)). The Opinion denied E.Q.'s motion based on a finding that "he likely lacks standing" and thus cannot establish a likelihood of success on the merits factor under *Nken*. Opinion at 2. The Opinion did not address the All Writs Act.

With respect to its standing analysis, the Opinion recognized that the February IJ Decision "was not among the record materials provided to the Court." Opinion at 9, n.2. As a result, the Opinion focused its standing analysis solely on the asylum officer's decision. The Opinion found that the asylum officer's negative decision was based on two alternative grounds: (i) application of the Mandatory Bars and (ii) "E.Q.'s failure to establish future persecution because of a protected ground (the 'no-nexus finding')." Opinion at 13. Given the no-nexus finding, the Opinion held that E.Q. lacked standing because "even absent application of the [Mandatory Bars Rule], the outcome of E.Q.'s first credible-fear interview . . . would have been the same." *Id*.

For the purposes[4] of this motion, E.Q. does not dispute the Opinion's factual finding that the asylum officer's "negative credible-fear determination was based on the no-nexus finding *and* the mandatory bars." Opinion at 17. But a separate analysis is required for the Immigration Judge's "*de novo* review of [the] asylum officer's credible-fear determination." Opinion at 6.

Reflecting the cursory nature of the credible fear process, Immigration Judges record their credible fear determinations using a check-the-box form that does not contain any space to record the basis for their decision. As a result, the February IJ Decision contains no indication as to whether the Immigration Judge ordered E.Q.'s removal based on the mandatory bars, the no-nexus finding, both findings, or different grounds altogether. The Immigration Judge may very well have

---

[4] E.Q. does not waive and expressly preserves all of the arguments presented in the Motion for the purposes of further proceedings and any future appeal.

reached his decision based on the asylum officer's erroneous finding that E.Q. was a "a member of the Taliban and [] a Suspected Terrorist (KST)." Dkt. 24-1 at 37. E.Q. thus has standing because, in the absence of the Mandatory Bars Rule, "there remains at least the possibility that [his proceedings] could reach a different conclusion." *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 185 (D.C. Cir. 2017).

## BACKGROUND

### A.   The Opinion

As the sole grounds for denying E.Q.'s Motion, the Opinion concluded that E.Q. "likely lacks standing" to challenge the Mandatory Bars Rule. The Opinion reached this conclusion based on an assessment of both traceability and redressability. First, with respect to traceability, the Opinion held as follows:

> While the Rules were one justification for his first negative credible-fear determination, they were not a but-for cause of it: E.Q.'s failure to establish future persecution because of a protected ground (the "no-nexus finding") provided an independent and sufficient legal basis to support the determination . . . Accordingly, even absent application of the Rules, the outcome of E.Q.'s first credible-fear interview—and therefore his associated removal order and the injury underlying his claim—would have been the same. His injury thus does not appear traceable to the Rules.

Having found that E.Q.'s injury was not traceable to the Mandatory Bars Rule, the Opinion followed a parallel analysis on redressability. As the Opinion stated, "[h]olding the Rules unlawful would not remedy E.Q.'s injury because, even without the Rules, he could still be removed based on his failure to establish nexus."

### B.   Plaintiffs Obtain a Copy of the Previously Undisclosed February IJ Decision

E.Q.'s counsel first obtained a copy of the February IJ Decision on June 10, 2025. See June 20, 2025, Cowgill Dec. at ¶ 9. E.Q. was not represented by counsel at his February 25, 2025, Immigration Judge hearing, and the February IJ decision indicates that E.Q. was not personally

3

served with a copy of that document. *Id*. at Exhibit to Cowgill Dec. Instead, at some unspecified time, the document was simply mailed to "Noncitizen c/o custodial officer." *Id*.

E.Q.'s counsel first requested the administrative record of E.Q.'s removal order from the U.S. Citizenship and Immigration Services (USCIS) Asylum Office on March 13, 2025. The following day, USCIS provided counsel with a record consisting solely of the following documents: Form I-869, Form I-863, Form I-870, the Securing the Border (SB) Worksheet, and the CFI Interview Notes and Decision. Cowgill Dec. at ¶ 3. The USCIS production (Dkt. 24-1) did not include a copy of the February IJ Decision. *Id.* at ¶ 4.

As described in the Opinion, Defendants ultimately provided E.Q. with a second credible fear interview on April 14, 2025. On April 30, 2025, E.Q.'s counsel learned that this second interview resulted in a negative credible fear determination. Id. at ¶¶ 5-7. Counsel, however, was not initially provided a copy of the record of the second interview. *Id*.

On May 1, 2025, E.Q.'s counsel submitted a second request to USCIS for the administrative record pertaining to E.Q.'s CFI proceedings. *Id*. at ¶ 7. That same day, USCIS responded by sending her the following documents by email: Form I-869, Form I-863, Form I-870, the Securing the Border (SB) Worksheet, the Interview Notes from E.Q.'s first CFI, and the CFI Interview Notes and Decision from his second CFI. *Id*. at ¶ 7; Dkt. 24-2. Once again, this second USCIS production did not include the February IJ Decision. Cowgill Dec. at ¶ 7.

On May 8, 2025, E.Q.'s counsel submitted a Freedom of Information Act request with the Executive Office for Immigration Review requesting the Record of Proceedings from E.Q.'s February 25, 2025, hearing before the immigration judge, including a copy of the February IJ Decision. *Id*. at ¶ 8. EOIR did not respond until June 10, 2025; that was the first time counsel ever received a copy of the February IJ Decision. *Id*. at ¶¶ 8-9; *see* Exhibit to Cowgill Dec.

The February IJ Decision (*id.*, Ex. 1) was made on a preprinted form that provided the Immigration Judge with a finite number of boxes to check to reflect his determination. In pertinent part, the form contains exactly two options regarding the Immigration Judge's determination as to whether the applicant has established a "reasonable possibility of persecution":

☐ Has established a reasonable possibility of persecution (meaning a reasonable possibility of being persecuted because of their race, religion, nationality, political opinion, or membership in a particular social group) or torture. **[If this box is checked, vacate.]**

☑ Has not established a reasonable possibility of persecution (meaning a reasonable possibility of being persecuted because of their race, religion, nationality, political opinion, or membership in a particular social group) or torture. **[If this box is checked, affirm.]**

As reflected above, the Immigration Judge checked the box indicating that E.Q. had not established a reasonable possibility of persecution. *See* Exhibit to Cowgill Dec.

The relevant form contained exactly two options to record whether the Immigration Judge was affirming or vacating the underlying negative credible fear determination:

**IT IS HEREBY ORDERED THAT:**
☑ The DHS credible fear determination is **AFFIRMED**, and the case is returned to DHS for removal of the Applicant.
☐ The DHS credible fear determination is **VACATED**.

As reflected above, the Immigration Judge checked the box indicating that he was affirming E.Q.'s negative credible fear determination. *Id.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 59(e), a party may move to "alter or amend a judgment no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). A Rule 59(e) motion "is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *D'Amore v. Small Bus. Admin.*, No. 21-CV-1505 (CRC),

2024 WL 3251224, at *2 (D.D.C. July 1, 2024) (Cooper, J) (internal citation omitted). To prevail on a Rule 59(e) motion based on new evidence, the moving party must establish that the underlying evidence is (i) "newly discovered or previously unavailable despite the exercise of due diligence" and (ii) would "change[] the Court's outcome." *Am. Bar Ass'n v. United States Dep't of Educ.*, 388 F. Supp. 3d 23, 26 (D.D.C. 2019) (internal citations and punctuation omitted).

## ARGUMENT

### I. The February IJ Decision Was Previously Unavailable Despite Counsel's Exercise of Due Diligence.

As detailed above, E.Q.'s counsel diligently sought access to the February IJ Decision which, at all times, was in Defendants' possession. E.Q.'s counsel made express written requests for these records on March 13, 2025, May 1, 2025, and May 8, 2025. Cowgill Dec. at ¶¶ 2,7-8. It is unclear why USCIS declined to provide a copy of the February IJ Decision in responses to the March 13 and May 1 requests or why it took one month to respond to the May 8 FOIA request. *Id.* at ¶¶ 2, 7-9. And it is unclear why Defendants omitted the February IJ Decision when filing their "Certified Administrative Record of E.Q.'s Credible Fear Review Proceedings" (Dkt. No. 26) with this Court. One thing is clear, however; despite counsel's diligent efforts to obtain a complete record, the government did not produce the February IJ Decision until June 10, 2025, after the Motion was fully briefed and argued, and less than 48 hours before this Court issued its Opinion.

### II. The February IJ Decision Establishes that E.Q. has Standing to Challenge the Mandatory Bars Rule

The Opinion's standing analysis was premised on an incomplete evidentiary record that did not include the February IJ Decision. *See* Opinion at 9, n.2 (noting the February IJ Decision "was not among the record materials provided to the Court"). As a result, the Opinion focused its standing analysis solely on the asylum officer's CFI Decision. In that context, the Opinion found that the asylum officer's interview notes "sufficiently establish that E.Q.'s first negative credible-

fear determination was based on the no-nexus finding *and* the mandatory bars." Opinion at 17. The Opinion thus reasoned that "even absent application of the Rules, the outcome of E.Q.'s first credible-fear interview—and therefore his associated removal order and the injury underlying his claim—would have been the same." *Id*. at 13.

While that reasoning may apply to the asylum officer's determination, it cannot apply to the February IJ Decision. Given the absence of any written explanation for the Immigration Judge's determination, there is no basis in the record to conclude that the Immigration Judge adopted the asylum officer's non-nexus finding rather than, for example, simply adopting Defendants' erroneous finding that E.Q. was a "a member of the Taliban and [] a Suspected Terrorist (KST)." Dkt. No 24-1 at 37. As reflected in *Kiakombua v. Wolf*, 498 F. Supp. 3d 1 (D.D.C. 2020), the possibility that the Immigration Judge could have reached an alternative conclusion in the absence of the Mandatory Bars Rule is sufficient to establish E.Q.'s standing.

In *Kiakombua*, the plaintiffs contended that asylum officers conducted unlawful CFIs based on a newly issued asylum lesson plan that "misrepresent[ed] the substantive law" applicable to eligibility for asylum. *Id*. at 10. Defendants challenged plaintiffs' standing, arguing that their negative CFIs were not traceable to the lesson plan because there was "zero evidence that the Lesson Plan, and the new standards it allegedly pronounced, played any role in Plaintiffs' negative credible fear determinations." *Id*. at 25. In rejecting this argument, the court held that it was not Plaintiffs' burden to prove that the denial of relief was expressly premised on the challenged Lesson Plan.

Instead, the court found it sufficient that (i) "the Lesson Plan was in effect at the time that Plaintiffs' credible fear determinations were made" and (ii) asylum officers were thus required to consider the Lesson Plan when making credible fear determinations. *Id*. Because the lesson plan

7

was a *possible* cause of the negative CFI determinations, the plaintiffs had standing. As the court explained, a plaintiff alleging a procedural injury "need not show the agency action would have been different had it been consummated in a procedurally valid manner—the courts will assume this portion of the causal link." *Id.* (*quoting Mendoza v. Perez*, 754 F.3d 1002, 1012 (D.C. Cir. 2014)).

Here, particularly in light of the ambiguity in the February IJ decision, the same analysis applies. With respect to that decision, the record provides only three real certainties:

- The Immigration Judge received the CFI Decision, which included the asylum officer's determination that E.Q. was a "a member of the Taliban and [] a Suspected Terrorist (KST)." Dkt. No 24-1 at 37.
- Pursuant to 8 C.F.R. §1003.42, as amended by the Mandatory Bars Rule, the Immigration Judge was required to consider "the asylum officer's application of any bars to asylum and withholding of removal pursuant to 8 CFR 208.30(e)(5)."
- It is entirely plausible that the Immigration Judge issued his negative decision based solely on the Mandatory Bars.

As the Court in *Kiakombua* found, this is sufficient to establish traceability because a plaintiff who alleges a deprivation of a procedural right "never has to prove that if he had received the [proper] procedure the substantive result would have been altered . . . Instead, all that is necessary is to show that the procedural step *was connected to* the substantive result." *Kiakombua*, 498 F. Supp. at 25 (*quoting Sugar Cane Growers Co-op. v. Veneman*, 289 F.3d 89, 94 (D.C. Cir. 2002)).

Because E.Q. has established an injury that is traceable to the Mandatory Bars Rule, he has also established redressability. In finding an absence of redressability below, the Court's Opinion focused solely on the CFI Decision. In that context, the Opinion found that the no-nexus finding was "an independent and sufficient ground for" the asylum officer's negative determination and thus "the outcome would *not* have been different *even if* the protection [i.e. vacatur of the rule]

8

were afforded." Opinion at 18. But as it pertains to the February IJ Decision—which was a *de novo* review of E.Q.'s credible fear finding—there is no evidence the Immigration Judge adopted the no-nexus finding. Under the "relaxed redressability requirement" for procedural injury claims, plaintiffs "need only show that the agency's decision *could be* altered as a result of compliance with the procedural requirement. "*Las Americas Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 22 (D.D.C. 2020) (quotation omitted) (emphasis in original). Redressability is thus satisfied because, if the Court were to vacate the Mandatory Bars Rule, "there remains at least the possibility that [E.Q.'s proceedings] could reach a different conclusion." *Ctr. For Biological Diversity v. Env't Prot. Agency*, 861 F.3d 174, 185 (D.C. Cir. 2017).

## CONCLUSION

For the reasons stated above, E.Q. respectfully requests that the Court (i) modify the Opinion based on the February IJ Decision to find that E.Q. does have standing; (ii) proceed to address the merits of E.Q.'s motion to stay removal (including under both the *Nken* factors and the All Writs Act); and (iii) issue an administrative stay of E.Q.'s removal pending a final decision on E.Q.'s Motion to Stay Removal.

Dated: June 20, 2025                                           Respectfully Submitted,

| | |
|---|---|
| Jared A. Levine (admitted *pro hac*) | s/ Keren Zwick |
| Joachim Steinberg* | Keren Zwick (D.D.C. Bar. No. IL0055) |
| CROWELL & MORING LLP | Colleen Cowgill* |
| 375 9th Ave, 44th Floor | Fizza Davwa* |
| New York, NY 10001 | NATIONAL IMMIGRANT JUSTICE CENTER |
| (212) 223-4000 | 111 W. Jackson Blvd., Suite 800 |
| JLevine@crowell.com | Chicago, IL 60604 |
| JSteinberg@crowell.com | (312) 660-1370 |
| | kzwick@immigrantjustice.org |
| Judy He (admitted *pro hac*) | ccowgill@immigrantjustice.org |
| Jeremy Iloulian* | fdavwa@immigrantjustice.org |
| Jung Shin (admitted pro hac) | |
| CROWELL & MORING LLP | Melissa Crow (D.C. Bar. No. 453487) |
| 455 N Cityfront Plaza Dr #3600, | CENTER FOR GENDER & REFUGEE STUDIES |
| Chicago, IL 60611 | 1121 14th Street, NW, Suite 200 |

9

<div style="columns:2">

(312) 321-4200
JHe@crowell.com
JIloulian@crowell.com
JShin@crowell.com

Robert Pauw
CENTER FOR GENDER & REFUGEE STUDIES
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104
(206) 682-1080
rpauw@ghp-law.net

Richard Caldarone (D.C. Bar No. 989575)
REFUGEE & IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES
P.O. Box 786100
San Antonio, TX 78278
(210) 960-3206
richard.caldarone@raicestexas.org

Washington, D.C. 20005
(202) 355-4471
crowmelissa@uclawsf.edu

Anne Peterson
Center for Gender & Refugee Studies
200 McAllister Street
San Francisco, California 94102
T: 415.610.5729
petersonanne@uclawsf.edu

Anwen Hughes*
Human Rights First
75 Broad St., 31st Fl.
New York, NY 10004
(212) 845-5244
HughesA@humanrightsfirst.org

Peter Alfredson (D.C. Bar No. 1780258)
AMICA CENTER FOR IMMIGRANT RIGHTS
1025 Connecticut Ave. NW, Suite 701
Washington, DC 20036
(202) 899-1415
peter@amicacenter.org


*Certificate of pro bono representation or pro hac vice forthcoming

</div>