BRETT A. SHUMATE
*Assistant Attorney General*
ANTHONY P. NICASTRO
*Acting Director*
GLENN A. GIRDHARRY
*Acting Deputy Director*
WILLIAM C. SILVIS
*Assistant Director*
CARA E. ALSTERBERG
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4667
Email: Cara.E.Alsterberg@usdoj.gov
SHELBY WADE
*Trial Attorney*

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ ) | Civil Action: No. 1:25-cv-00791 |
| E.Q., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| U.S. Department of Homeland ) | |
| Security, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

ARGUMENT ...............................................................................................................1

I.    The Court has already acknowledged that Plaintiff E.Q.'s harm was not traceable to the Rules or redressable by this Court, and Plaintiffs in their Opposition have not demonstrated that the Court should find differently ........................................................1

II.    Plaintiffs have not demonstrated that Plaintiff E.Q. has an ongoing case or controversy; as such, his claims are moot.................................................................3

III.    Plaintiffs still fail to demonstrate that the organizational Plaintiffs have standing to challenge the Rules; instead, they reiterate previously made arguments that are not compelling...............................................................................................................6

IV.    The organizational Plaintiffs are outside the zone of interests of the relevant statutes.................................................................................................................11

V.    The organizational Plaintiffs cannot challenge the reasonable fear provisions of the Rules ...................................................................................................................12

VI.    Plaintiffs fail to state a claim because the Rules are consistent with the INA.............14

    A.  The Rules do not deny individuals the right to apply for asylum in Section 240 removal proceedings ....................................................................................14

    B.  The application of the DHS Bars Final Rule by DHS does not violate the INA...16

    C.  Asylum officers rely on more than just their "predictions" in applying the DHS Bars Final Rule .........................................................................................19

VII.    Defendants' assertion that the Rules are not arbitrary or capricious is not premature because the question is purely legal..........................................................................20

CONCLUSION............................................................................................................22

i

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Block v. Cmty. Nutrition Inst.*,

    467 U.S. 340 (1984)................................................................................. 13

*Commissioned Officers Ass'n of U.S. Pub. Health Serv. v. Bunch*,

    2022 WL 951271 (D.D.C. Mar. 30, 2022)................................................. 8

*Citizens for Resp. & Ethics in Washington v. Wheeler*,

    352 F. Supp. 3d 1, 13 (D.D.C. 2019) ……………………………………………5, 11

*Ctr. For Democracy & Tech v. Trump*,

    507 F. Supp. 3d 213 (D.D.C. 2020) …………………………………..……………..9

*Ctr. for Responsible Science v. Gottlieb*,

    346 F. Supp. 3d 29 (D.D.C. 2018).................................................... 8, 10

*Davis v. Michigan Dept. of Treasury*,

    489 U.S. 803 (1989)................................................................................. 14

*DL v. District of Columbia*,

    187 F. Supp. 3d 1 (D.D.C. May 18, 2016)........................................... 4, 5

*\*FDA v. All. for Hippocratic Med.*,

    602 U.S. 367 (2024)....................................................................... *passim*

*Food & Water Watch, Inc. v. Vilsack*,

    808 F.3d 905 (D.C. Cir. 2015)................................................................ 8

*Haitian Refugee Center v. Gracey*,

    809 F.2d 794 (D.C. Cir. 1987)........................................................ 11, 12

*Havens Realty Corp. v. Coleman*,

    455 U.S. 363 (1982)....................................................................... *passim*

*INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*,

    510 U.S. 1301 (1993) ................................................................................................. 12

*Kiakombua v. Wolf,*

498 F. Supp. 3d 1 (D.D.C. Oct. 31, 2020) ................................................................. 4, 5

*Las Americas v. DHS*,

    2025 WL 1403811 (D.D.C. May 9, 2025) ..................................................................... 9

*Lexmark Int'l, Inc. v. Static Ctrl. Components, Inc.*,

    572 U.S. 118 (2014) ................................................................................................... 11

*Marshall Cnty. Health Care Auth. v. Shalala*,

    988 F.2d 1221 (D.C. Cir. 1993) ................................................................................. 20

*Nat'l Treasury Emps. Union v. United States*,

    101 F.3d 1423 (D.C. Cir. 1996) ................................................................................. 10

*O.A. v. Trump*,

    404 F. Supp. 3d 109 (D.D.C. 2019) ................................................................... 5, 9, 10

*PETA v. USDA*,

    797 F.3d 1087 (D.C. Cir. 2015) ................................................................................... 8

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*,

    2025 WL 1825431 (D.D.C. July 2, 2025) ......................................................... 7, 9, 10

*Thompson v. N. Am. Stainless*,

    562 U.S. 170 (2011) ................................................................................................... 11

*United States v. Morton*,

    467 U.S. 822 (1984) ................................................................................................... 14

*Washington v. U.S. Off. Of Special Couns.*,

    480 F. Supp. 3d 118 (D.D.C. 2020) ................................................................. 11

*Young v. District of Columbia Housing Auth.*,

    31 F.Supp.3d 90 (D.D.C. Mar. 12, 2014) ......................................................... 5

## STATUTES

6 U.S.C. § 271(b)(3) .................................................................................................. 18

6 U.S.C. § 557 ........................................................................................................... 18

8 U.S.C. § 1103(a)(1) ................................................................................................ 18

8 U.S.C. § 1103(a)(3) ................................................................................................ 18

8 U.S.C. § 1103(g)(1) ................................................................................................ 16

8 U.S.C. § 1158(b)(1)(A) ............................................................................. 14, 15, 16, 18

8 U.S.C. § 1158(b)(2)(A) .................................................................................... 15, 16

8 U.S.C. § 1158 ......................................................................................................... 11

8 U.S.C. § 1225 ......................................................................................................... 11

8 U.S.C. § 1225(b)(1) ................................................................................................ 19

8 U.S.C. § 1225(b)(1)(B) ........................................................................................... 18

8 U.S.C. § 1225(b)(1)(B)(v) .............................................................................. 14, 15, 19

8 U.S.C. § 1228(b) ..................................................................................................... 12

8 U.S.C. § 1252(e)(3) ................................................................................................. 5

8 U.S.C. § 1231 ......................................................................................................... 11

# RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................... *passim*

Fed. R. Civ. P. 12(b)(1) ............................................................................... *passim*

Fed. R. Civ. P. 12(d) .......................................................................................... 21

# REGULATIONS

8 C.F.R.§ 208.13(c)(1) ..................................................................................... 17

8 C.F.R.§ 208.13(c)(2) ..................................................................................... 17

8 C.F.R.§ 208.14(b) ......................................................................................... 18

8 C.F.R.§ 208.2(a) ........................................................................................... 18

8 C.F.R.§ 208.30(b) ......................................................................................... 18

8 C.F.R. § 208.30(e)(1) ...................................................................................... 2

8 C.F.R. § 208.30(e)(5)(ii) ........................................................................... 18, 19

8 C.F.R.§ 208.30(e)(8) ....................................................................................... 2

8 C.F.R.§ 208.30(3)(ii)(A) ............................................................................... 16

8 C.F.R.§ 208.9 ............................................................................................... 18

# OTHER AUTHORITIES

*Aliens and Nationality; Refugee and Asylum Procedures*, 45 Fed. Reg. 37,392 (June 2, 1980)..18

*Application of Certain Mandatory Bars in Fear Screenings*, 89 Fed. Reg. 103,370 (Dec. 18, 2024) ............................................................................................ 1, 18, 19, 20

*Application of Certain Mandatory Bars in Fear Screenings*, 89 Fed. Reg. 41,347 (May 13, 2024) ..................................................................................................................... 1

*Clarification Regarding Bars to Eligibility During Credible Fear and Reasonable Fear Review*, 89 Fed. Reg. 105,392 (Dec. 27, 2024) ......................................................................................... 1

*Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 444,460 (Jan. 3, 1997)…………...…16

*Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10,312 (Mar. 6, 1997)…………..…..17

*Securing the Border*, 89 Fed. Reg. 48,710 (June 7, 2024)………………………………...17

## INTRODUCTION

Plaintiffs continue to fail to establish this Court's jurisdiction over their claims, either on behalf of Plaintiff E.Q. or on behalf of the three organizational Plaintiffs. *See generally* ECF No. 44. This Court has already determined that Plaintiff E.Q. likely lacked standing, and Plaintiffs have not presented any compelling arguments in their Opposition to disturb this finding. *See* ECF No. 40 at 13. Plaintiffs also cannot overcome mootness given that Plaintiff E.Q. received a follow-up credible fear interview. Similarly, the three organizational Plaintiffs have not shown that they have standing to challenge the Rules[1] because they cannot demonstrate that the Rules interfere with their organizations' activities by imposing an affirmative impediment to performing those activities. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394–95 (2024) ("*Alliance*"). Justiciability issues aside, Plaintiffs' Complaint also fails to state a claim upon which relief can be granted. Accordingly, the Court should grant Defendants' Motion and dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## ARGUMENT

**I.    The Court has already acknowledged that Plaintiff E.Q.'s harm was not traceable to the Rules or redressable by this Court, and Plaintiffs in their Opposition have not demonstrated that the Court should find differently.**

Despite the previous order by the Court that Plaintiff E.Q. "appears to lack standing[,]" Plaintiffs continue to advance the same arguments. ECF No. 35 at 13–16 (discussing Plaintiffs'

---

[1]    Defendants use the term "Rules" to mean both the final rule issued by the Department of Homeland Security ("DHS"), *Application of Certain Mandatory Bars in Fear Screenings*, 89 Fed. Reg. 103,370 (Dec. 18, 2024) ("DHS Bars Final Rule"), which was issued after DHS provided notice and an opportunity to comment in *Application of Certain Mandatory Bars in Fear Screenings*, 89 Fed. Reg. 41,347 (May 13, 2024) ("DHS Bars NPRM"); and (2) an interim final rule issued by the Executive Office for Immigration Review ("EOIR"), *Clarification Regarding Bars to Eligibility During Credible Fear and Reasonable Fear Review*, 89 Fed. Reg. 105,392 (Dec. 27, 2024) ("EOIR Bars IFR").

arguments that the I-869 "somehow overrides the findings and explanation in the rest of the record"); ECF No. 44 at 11–14 (reiterating arguments that the "Form I-869 is the controlling document"). Here, Plaintiffs again assert that Plaintiff E.Q.'s injury—his first negative credible-fear determination—is "fairly traceable" to the Rules because the Form I-869 is the "controlling document" regarding the reason for a negative credible fear determination. ECF No. 44 at 11–12; ECF No. 44 at Ex. A. In support of this argument, Plaintiffs now submit a declaration from a former senior asylum officer who stated that the I-869 "indicates the *actual* reason for the denial and the legal sufficiency of that determination." *Id*. at Ex. A at ¶ 10 (emphasis in original). Plaintiffs again assert that the position of I-869 as the first document in a credible fear packet, the regulatory language, and the fact that the I-869 is the only document that is read aloud to the alien at the hearing all support this conclusion. *Id*. at 12–13.

However, the Court already addressed Plaintiffs' arguments in its June 12, 2025 order denying Plaintiff E.Q.'s stay of removal. ECF No. 35. As the Court noted, "[n]othing in the statutes, regulations, or caselaw indicates that [a] Form I-869 has special force." *Id*. at 14. While Plaintiffs submitted a declaration from a former asylum officer, the declarant never points to a specific statute, regulation, or any case law to support her assertions; instead, the declarant simply rests on her personal knowledge. *See* ECF No. 44, Ex. A.

Moreover, while Plaintiffs continue to insist that the I-869 "provides the official reasons for E.Q.'s denial[,]" they have not rebutted the Court's findings that the Form I-869 does not "contain a summary of material facts, the officer's analysis, the officer's notes, or the supervisory officer's signature[,]" as is required by 8 C.F.R. § 208.30(e)(1), (8). ECF No. 35 at 14–15.

And as Defendants already argued in their Motion, Plaintiff E.Q. failed to establish a credible fear of future persecution on a protected ground, and the officer's "no-nexus" finding was

an independent and sufficient legal basis to support the negative determination unrelated to the Rules. ECF No. 42-1 at 14.; *see* ECF No. 40 at 13. Plaintiff E.Q. cannot point to any part of the no-nexus finding that turned on or was influenced by the Rules. ECF No. 42-1 at 14. Consequently, even if the Rules had not been applied, the outcome of the first credible fear interview would have been the same; thus, Plaintiff E.Q.'s injury is not traceable to the Rules. *Id*. Lastly, Plaintiff E.Q.'s alleged injury is not redressable because—even if the Court holds the Rules unlawful—Plaintiff E.Q. would still have a negative credible fear determination based on his failure to establish nexus. *Id*.

For these reasons and the explanations laid out in the Defendants' Motion to Dismiss— including that Plaintiff E.Q. has not suffered a concrete injury and that his alleged injury is not likely to be redressed by a favorable judicial decision—Plaintiff E.Q. does not have standing and his claims must be dismissed for lack of subject-matter jurisdiction.

## II.    Plaintiffs have not demonstrated that Plaintiff E.Q. has an ongoing case or controversy; as such, his claims are moot.

Even if Plaintiff E.Q. *could* establish standing, his claims are moot. Plaintiff E.Q has already received a second follow-up credible fear interview where the officer did *not* apply the Rules to Plaintiff E.Q.'s case. ECF No. 24-2 at 14–15. Instead, the asylum officer listened to Plaintiff E.Q.'s testimony at this second credible fear interview and determined that Plaintiff E.Q. had *not* testified credibly and that he had not established a credible fear of persecution or torture. *Id*. at 14–15, 63–65.

Contrary to Plaintiffs' assertions that Plaintiff E.Q.'s expedited removal order still rests on the original credible fear interview "because the negative result of E.Q.'s second CFI was based on purported inconsistencies with statements E.Q. made during the first CFI," ECF No. 44 at 15, the Rules did not prevent Plaintiff E.Q. from testifying credibly in his second credible fear

interview. Plaintiffs also continue to rely on *Kiakombua v. Wolf* to contend that because Plaintiff E.Q.'s second credible fear interview was denied based on inconsistences he made in his first credible fear interview, his claims are not moot. 498 F. Supp. 3d 1, 28 (D.D.C. Oct. 31, 2020) ("If there is *any* possibility that the prior adverse credible fear determination could be used to thwart Plaintiffs' efforts to obtain full consideration of their asylum applications, then their claims are not moot[.]"); ECF No. 44 at 15. As an initial matter, and as this Court already found, Plaintiff E.Q.'s first negative credible-fear determination rested not solely on the challenged rules but also on the independently dispositive no-nexus finding. ECF No. 40 at 18. Plaintiff E.Q.'s case differs materially from the situation presented in *Kiakombua* in which the *only* asserted cause of the plaintiffs' injuries was the training plan for asylum officers. 498 F. Supp. 3d at 15. Here, there is an independent and sufficient basis for plaintiff E.Q.'s injury—his second negative credible fear determination based on his adverse credibility—and that basis cannot be challenged in this matter. Further, the outcome—a negative credible fear determination—would not have been different even if the Rules were never analyzed by the asylum officer. Plaintiff E.Q. *still* received a negative credible fear determination even when the Rules were not applied at all. *See Second CFI Record*, ECF No. 24-2 at 11.

Plaintiffs further assert that Plaintiff E.Q.'s claims are not moot because the voluntary cessation exception applies to his case. ECF No. 44 at 16–17. The voluntary cessation exception "exists where a party has extinguished the controversy by voluntarily changing its allegedly unlawful conduct after the commencement of a lawsuit." *DL v. District of Columbia*, 187 F. Supp. 3d 1, 6 (D.D.C. 2016). As such, a party's voluntary cessation of a challenged practice will moot a case only if (1) "there is no reasonable expectation that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged

violation." *Young v. D.C. Housing Auth.*, 31 F.Supp.3d 90, 96 (D.D.C. Mar. 12, 2014). Further, "[t]he party asserting mootness bears the burden . . . and it is a 'heavy' one." *Citizens for Resp. & Ethics in Washington v. Wheeler*, 352 F. Supp. 3d 1, 13 (D.D.C. 2019).

In this matter, the Defendants have not ceased applying the Rules; as such, Plaintiffs cannot argue that voluntary cessation exists in this situation because Defendants have not "extinguished the controversy by voluntarily changing [their] allegedly unlawful conduct after the commencement of [this] lawsuit." *DL*, 187 F. Supp. 3d at 6. Instead, even though Defendants have not ceased application of the Rules, Plaintiff E.Q. *still* received a second, independent credible fear interview that did not apply the Rules. Further, as the Court found in its June 12, 2025 decision, "even without the Rules, [Plaintiff] could still be removed on his failure to establish nexus." ECF No. 40 at 13. As such, the Rules were not the *only* reason Plaintiff E.Q. received a negative credible fear determination. Consequently, Defendants have met their "heavy" burden of demonstrating that Plaintiff E.Q.'s claims are moot, without exception. *Citizens for Resp. & Ethics in Washington*, 352 F. Supp. 3d at 13.

Lastly, Plaintiffs contend that Plaintiff E.Q.'s claims "cannot be moot" because they arise under 8 U.S.C. § 1252(e)(3). ECF No. 44 at 17. Plaintiffs argue that Defendants cannot "moot a claim about [credible fear interview] procedures by providing a new [credible fear interview]" as it means Defendants can "unilaterally force 'this Court to lose jurisdiction under § 1252(e)(3) . . . up to the moment the Court enters final judgment[.]" *Id*. (citing *O.A. v. Trump*, 404 F. Supp. 3d 109, 140 (D.D.C. 2019), *appeal dismissed*, No. 19-5272, 2023 WL 7228024 (D.C. Cir. Nov. 1, 2023)). But *O.A. v. Trump* and *Kiakombua v. Wolf* concerned whether the court lost jurisdiction under § 1252(e)(3) after plaintiffs were moved from expedited to Section 240 removal proceedings. *See* 404 F. Supp. 3d at 140; *see* 498 F. Supp. 3d at 29. There are no analogous actions

or arguments here. Plaintiff E.Q. received a follow-up credible fear interview where the asylum officer found that E.Q. was not credible and that he had not established a credible fear of persecution or torture. ECF No. 24-2 at 14–15, 63–65. As such, Defendants have not taken actions to "allow them to escape judicial review of unlawful policies forever[,]" as Plaintiffs suggest. ECF No. 44 at 17. Instead, Defendants continue to assert that Plaintiff E.Q. was not harmed by the Rules in either his first or follow-up credible fear interview to establish standing to challenge them in the first place. ECF No. 42-1 at 15. Consequently, there is no ongoing case or controversy and Plaintiff E.Q.'s claims must be dismissed for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

### III.    Plaintiffs still fail to demonstrate that the organizational Plaintiffs have standing to challenge the Rules; instead, they reiterate previously made arguments that are not compelling.[2]

Pursuant to *Alliance*, "organizations *may* have standing 'to sue on their own behalf for injuries they have sustained.'" 602 U.S. at 393 (emphasis added). However, to do so, the organizations "must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Id*. at 394.

The three remaining Plaintiffs in this matter are organizations that allege that the Rules would "directly affect[] and interfere[] with [their] core business activities" by "perceptibly impair[ing] [their] ability to provide counseling" and legal services to aliens at risk of removal. ECF No. 44 at 18 (citing *Alliance*, 602 U.S. at 395 (discussing the holding in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)). The phrasing that Plaintiffs cling to in their argument is not

---

[2]    In their Opposition to Plaintiffs' Motion to Dismiss, the organizational Plaintiffs confirm that they "have not alleged third-party standing." ECF No. 44 at 21. Instead, the organizational Plaintiffs state that they "seek to address harms resulting from the Rules' interference with their own core activities." *Id*. Because Plaintiffs confirmed that they do not allege third-party standing and do they address Defendants' arguments in their Opposition, Defendants do not address third-party standing further here.

taken from the facts presented in *Alliance*, but instead from the *Havens Realty* decision the Supreme Court discussed in its *Alliance* decision. *Alliance*, 602 U.S. at 395 ("HOME sued Havens because Havens 'perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers.'"). But as the *Alliance* decision noted, "*Havens* was an unusual case, and this Court has been careful *not to extend* the *Havens* holding beyond its context." *Id*. at 396 (emphasis added).

While "[t]he D.C. Circuit 'has applied *Havens Realty* to justify organizational standing in a wide range of circumstances[,]" those circumstances are not present here. *Refugee & Immig. Ctr. for Educ. & Legal Servs. v. Noem*, 2025 WL 1825431, at *22 (D.D.C. July 2, 2025) ("*RAICELS*") ("But *Havens* is not without limits. . . . [S]tanding is not precluded, but it is ordinarily substantially more difficult to establish."). Instead, the organizational Plaintiffs in their opposition simply reiterate allegations already made in their Complaint and do not attempt to rebut Defendants' arguments made in their motion to dismiss. *Compare* ECF No. 1 *with* ECF No. 44. Specifically, Plaintiffs fail to refute Defendants' arguments that Plaintiffs, at most, claim an indirect impact from the Rules' effect on aliens to whom Plaintiffs provide information and guidance, and that allegations of an accelerated need for the Plaintiffs' services which will cause them to divert resources does not "impair or interfere with their existing activities[.]" ECF No. 42-1 at 16–18.

Here, Plaintiffs assert that the Rules "*will* seriously impede" their core activities "by forcing them to divert scarce resources away from other critical programs to compensate for the additional time, procedures, staffing, and training required to address the *potential* application of the mandatory bars during the fear screening process." ECF No. 44 at 19 (emphasis added). Plaintiffs allege that the Rules "would hinder critical efforts" and require the organizations' teams

to spend "additional time and resources explaining the complexities" of the Rules during presentations to detained aliens. *Id*. at 20.

However, it is not enough that "an organization diverts its resources in response to defendant's actions" even if it will "expend considerable time, energy, and resources" in response to a policy change. *Havens Realty*, 602 U.S. at 394–95. An organizational plaintiff also cannot satisfy the injury-in-fact standard by "alleging that agency action will make *future* lobbying or educational efforts more difficult." *Commissioned Officers Ass'n of U.S. Pub. Health Serv. v. Bunch*, 2022 WL 951271, at *7 (D.D.C. Mar. 30, 2022) (emphasis added); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 921 (D.C. Cir. 2015) (holding that an organization lacked standing when it had presented claims that demonstrated "nothing more than an abstract injury to its interests that is insufficient to support standing").

Here, the organizational Plaintiffs have not shown that the implementation of the Rules will "perceptibly impair" or "interfere with" their activities by imposing an affirmative "impediment" to performing their activities. *Alliance*, 602 U.S. at 395. Instead, Plaintiffs overall assert that the implementation of the Rules will cause the organizations to divert their services, to alter their procedures, and to reallocate funds and time to address the new issues that implementation of the Rules will pose to their clients. *See* ECF No. 44 at 18–20. However, pursuant to D.C. Circuit precedent, this does not constitute an *injury* to their ability to carry out their activities as it is not an allegation that the Rules cause an "inhibition of [Plaintiffs'] daily operations." *PETA v. USDA*, 797 F.3d 1087, 1094 (D.C. Cir. 2015). Thus, "organizational standing is not based on 'diversion of resources from one program to another, but rather on the alleged injury that the defendants' actions themselves had inflicted upon the organization's programs." *Ctr. for Responsible Science v. Gottlieb*, 346 F. Supp. 3d 29, 41 (D.D.C. 2018).

Even if the types of harms Plaintiffs claim were sufficient for organizational standing (they are not), their claims are too vague, speculative, and distant, such as a potential future loss of funding, the projected, speculative impact of the Rules on Plaintiffs' ability to receive funding, and a possibility of providing services to fewer clients. ECF No. 44 at 19 ("Organizational Plaintiffs allege that the Rules will seriously impede these core activities by forcing them to divert scarce resources away from other critical programs to compensate for the additional time, procedures, staffing, and training required to address the potential application of the mandatory bars during the fear screening process."); *id*. at 20 (stating that Amica Center's team "will now be required to spend additional time and resources explaining the complexities of the bars[,]" that RAICES must update its presentations and reduce the number of presentations it provides, that the Florence Project must spend more time providing information and legal advice on mandatory bars to individuals, and that, overall, the organizational Plaintiffs will have to dedicate additional time and resources to create materials about the Rules and that the Rules will reduce the number of aliens the Plaintiffs can represent).

Because the organizational Plaintiffs have so broadly defined their core missions and activities, their activities providing legal immigration services and counseling to aliens are likely to be affected by *any* government action impacting immigration. In contrast to the cases Plaintiffs cite in their opposition, such as *O.A. v. Trump*, 404 F. Supp. 3d at 144–45; *RAICELS v. Noem*, 2025 WL 1825431, at *22–23; and *Las Americas v. DHS*, 2025 WL 1403811, at *8–9 (D.D.C. May 9, 2025), Plaintiffs fail to provide particular, specific details regarding injury. *See Ctr. For Democracy & Tech. v. Trump*, 507 F. Supp. 3d 213, 219 (D.D.C. 2020) ("To establish Article III standing, an injury must be concrete, particularized, and actual or imminent . . . . Organizations, like individuals, must satisfy these elements.") (internal citations omitted).

For example, in *O.A.*, the organizational plaintiffs' litigation directors submitted affidavits describing "the organization's mission in detail" and listed specific ways that the challenged rule undermined their mission and imposed substantial, tangible costs on the organization. 404 F. Supp. 3d at 142–43. Similarly, in *RAICELS*, the organizational plaintiffs included a declaration by the legal director of the organization, using specific numbers of how many individuals the organization helped before versus after the challenged proclamation went into effect. 2025 WL 1825431, at *23. Here, however, the broad and generalized assertions by the organizational Plaintiffs are not enough to meet the standard as set forth in *Alliance* to demonstrate that the challenged action "perceptibly impair[s]" or "interferes with" its activities by imposing an affirmative "impediment" to performing those activities. 602 U.S. at 394–95. Even though it is their burden, Plaintiffs have failed to submit declarations regarding harm or specific ways in which they will be impacted other than mere speculation.

Additionally, Plaintiffs cannot spend their way "into standing simply by expending money to gather information and advocate against the defendant's action." *Alliance*, 602 U.S. at 394. Instead, "something about the challenged action itself—rather than the organization's response to it—[must] make[] the organization's task more difficult." *Ctr. for Responsible Science*, 346 F. Supp. 3d at 41. Even if an organization's missions are somehow frustrated and made more difficult, this is still not enough to establish standing. *See id.* at 38 ("[A]n organization seeking to bring a case in its own right must first allege that the challenged conduct perceptibly impairs its activities, as opposed to merely frustrating its mission[.]"). Here, the organizational Plaintiffs cannot demonstrate that the Rules directly harm their existing core activities; instead, they simply allege that the Rules will make their tasks more costly and time consuming. However, cost and time are not sufficient to demonstrate organizational standing. *See Nat'l Treasury Emps. Union v. United*

*States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996) ("[T]he presence of a direct conflict between the defendant's conflict and the organization's mission is . . . *not alone sufficient* . . . to establish standing." (emphasis added)); *Citizens for Resp. & Ethics in Washington v. U.S. Off. Of Special Couns.*, 480 F. Supp. 3d 118, 128 (D.D.C. 2020) ("[A]n organization seeking to bring a case in its own right must first allege that the challenged conduct perceptibly impairs its activities, *as opposed to merely frustrating its mission.*" (emphasis added)).

Consequently, the organizational Plaintiffs have not demonstrated that they have standing. Without a Plaintiff remaining, this Court should dismiss this Complaint in its entirety for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

### IV.    The organizational Plaintiffs are outside the zone of interests of the relevant statutes.

To satisfy the zone of interests' test for statutory standing, a plaintiff's interests must "fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Ctrl. Components, Inc.*, 572 U.S. 118, 129 (2014). A plaintiff "may not sue unless he falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Thompson v. N. Am. Stainless*, 562 U.S. 170, 177 (2011). In applying the zone of interests test, "a court must discern whether the interest asserted by a party *in the particular instance* is one intended by Congress to be protected or regulated by *the statute under which suit is brought.*" *Haitian Refugee Center v. Gracey*, 809 F.2d 794, 814 (D.C. Cir. 1987) (emphasis in original).

First, Plaintiffs still cannot demonstrate that they are within the zone of interests protected by the statutes Defendants have allegedly violated—8 U.S.C. §§ 1158, 1225, 1231. Instead, Plaintiffs simply assert that other courts have had "no trouble finding that legal service organizations serving noncitizens fall within the zone of interests" advanced in those cases because

their 'daily work is governed by the INA and because 'the INA contemplates an important role for organizations like the Plaintiffs." ECF No. 44 at 24–25 (internal citations omitted). Yet, the provisions allegedly violated, such as 8 U.S.C. § 1225, "do not regulate the organizational Plaintiffs' conduct or create any benefits for which the organizations may be eligible." ECF No. 42-1 at 24.

Additionally, as Defendants noted, the fact that a regulation "may affect the way an organization allocates its resources . . . does not give standing to an entity which is not within the zones of interests the statute meant to protect." *INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*, 510 U.S. 1301, 1302 (1993); ECF No. 42-1 at 25–26. Indeed, the organizational Plaintiffs fail to demonstrate that *their interests* are ones in which Congress intended to be "protected or regulated." *Haitian Refugee Center*, 809 F.2d at 814. Therefore, the Court should find that the organizational Plaintiffs have not illustrated that they fall within the zone of interests of the statutes Defendants have allegedly violated and grant Defendants' Motion pursuant to Federal Rule of Civil Procedure 12(b)(1).

**V.    The organizational Plaintiffs cannot challenge the reasonable fear provisions of the Rules.**

Despite their attempts to argue otherwise, Plaintiffs still have not demonstrated that the organizational Plaintiffs can challenge the "reasonable fear" provisions of the Rules. As Defendants stated in their Motion, the reasonable fear provisions of the Rules are only applicable to aliens who have been ordered removed under 8 U.S.C. § 1228(b) or who have had a prior order of removal stated under § 1231(a)(5) and receive a fear screening before removal. ECF No. 42-1 at 25. Yet, here, no Plaintiff meets these prerequisites.

A plaintiff may not seek review under the APA if "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). The Supreme Court has accordingly recognized that, by providing a detailed

scheme for administrative and judicial review, Congress can displace the APA's default cause of action. *See, e.g.*, *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984). Preclusion of review is determined "not only from [the statute's] express language, but also from the structure of the statutory scheme." *Id.* In particular, Congress may impliedly preclude some parties from seeking judicial review of administrative action by constructing a detailed scheme that provides for review only by other parties. *See id.* That is the case here.

While Plaintiffs accuse Defendants of "hijack[ing] Congressional intent" by "creating new administrative mechanisms and seeking to clothe them in statutory garb," ECF No. 44 at 26, the case mentioned by Defendants—*Block.*, 467 U.S. at 345 (1984)—is still relevant. ECF No. 42-1 at 25–26. In *Block*, consumers, along with milk handlers, sued challenging a milk market order requiring handlers to make a compensatory payment on reconstituted milk. *See* 467 U.S. at 341. The Supreme Court held that the consumers did not have standing to challenge the milk market order because Congress only intended that producers and handlers to have standing. *See id.* at 353. Indeed, "the presumption favoring judicial review of administrative action is just that—a presumption. This presumption, like all presumptions used in interpreting statutes, may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." *Id.* at 349. Thus, *Block* confirms that where Congress does not include an "express provision for participation in" an administrative or judicial proceeding related to their challenge, "the omission of such a provision is sufficient reason to believe that Congress intended to foreclose [that individual's] participation[.]" 467 U.S. at 347; *see* ECF No. 42-1 at 26.

Accordingly, here, where the INA provides for administrative and judicial review for aliens but *does not* provide for administrative and judicial review for third parties, the omission of any such right is proof in itself—pursuant to relevant case law—that Congress intended to preclude

the organizational Plaintiffs from challenging the Rules through the APA. And if there is no reviewable cause of action, then *jurisdiction alone* under 28 U.S.C. § 1331 does not save Plaintiffs' Complaint.

### VI.    Plaintiffs fail to state a claim because the Rules are consistent with the INA.

#### A.    The Rules do not deny individuals the right to apply for asylum in Section 240 removal proceedings.

Plaintiffs assert that the Rules violate both underlying statutes and congressional intent as they expand the credible fear interview inquiry to consider mandatory bars to asylum. ECF No. 44 at 28. Plaintiffs further argue that both the structure and the text of the asylum and expedited removal statutes make clear that the mandatory bars are to be considered *after* an alien satisfies their burden of demonstrating that they meet the definition of a refugee. *Id.* at 29.

Yet, as Plaintiffs acknowledge, ECF No. 44 at 40, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989) (citing *United States v. Morton*, 467 U.S. 822, 828 (1984)). The expedited removal statute, 8 U.S.C. § 1225(b)(1)(B)(v), states that:

> "[C]redible fear of persecution" means that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim, and such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 1158 of this title.

Turning to the text of §§ 1158(b)(1)–(2), Plaintiffs assert that the statute "makes it clear" that the mandatory bars are meant to be considered only *after* a person satisfies their burden of demonstrating that they meet the refugee definition. ECF No. 44 at 29.

Contrary to Plaintiffs' assertions, this statutory scheme does not "make[] it plain" that an alien must *first* meet their prima facie burden to establish that they qualify as a refugee *prior* to the application of the mandatory bars. *See* ECF No. 44 at 29; 8 U.S.C. § 1158(b)(1)(A),

§ 1158(b)(1)(B)(i), § 1158(b)(2), § 1158(b)(2)(A). Instead, a plain reading of § 1158 is that paragraph (b)(1)(A) does not apply to those aliens who fall under the exceptions listed in (b)(2), regardless of whether they have not applied for asylum yet or have already completed their application.

Plaintiffs additionally assert that the text of the expedited removal statute furthers their arguments. Yet, as stated above, § 1225(b)(1)(B)(v) defines "credible fear of persecution" not in reference to whether an alien is a "refugee," but instead to whether the alien demonstrates a significant possibility that he *could* establish eligibility for asylum. As such, the language in the context of the statutory scheme demonstrates that the Rules do not expand the credible fear inquiry, but instead, are consistent with the INA.

In their last-minute attempts to demonstrate that the Rules violate the expedited removal and asylum statutes, Plaintiffs contend that the Rules undermine the "careful balance" set by Congress between the efficient removal of aliens and ensuring that individuals with valid asylum claims are not returned to countries where they could face persecution without a full removal hearing. ECF No. 44 at 31–33. The Rules do not *require* an alien to affirmatively offer evidence that they did not persecute others; documentary evidence is not required, and instead, the evidence needed may consist of the alien's oral testimony alone. *See* 89 Fed. Reg. at 103,375 (explaining that "[w]here an [asylum officer (AO)] exercises discretion to consider a mandatory bar in a fear screening, the AO will provide the noncitizen with an opportunity to present evidence that the bar does not apply, and credible testimony alone may be sufficient evidence to make that showing"). Because Plaintiff E.Q. could have presented testimony to show that the mandatory bars did not apply to him, and he did not do so, Plaintiffs' assertion that Plaintiff E.Q. *could* have made such a

15

showing if he had been allowed to provide documentary evidence as he would in full removal proceedings is a strawman. ECF No. 44 at 32.

Additionally, even if Plaintiff E.Q. rebutted the asylum officer's contentions, he still was unable to assert a cognizable nexus to further his claim. *First CFI Record*, ECF No. 37-1 at 16. Further, the "significant possibility" standard is not lowered or raised; instead, it adopts the merits hearing framework while applying the credible fear standard. *See* ECF No. 42-1 at 32. Lastly, contrary to Plaintiffs' contention, Defendants *have* cited authority that mandatory bars were never exempt from consideration by the Executive even if they were not actually considered at the time. *See* ECF No. 42-1 at 28–29. For example, after the passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") when the former Immigration and Naturalization Service ("INS") initially issued regulations in 1996 implementing the credible fear screening process, it did not exempt the mandatory bars from consideration. *Id*. (citing *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 444,460, 468–69 (Jan. 3, 1997)).

       B.  <u>The application of the DHS Bars Final Rule by DHS does not violate the INA.</u>

Plaintiffs allege that the wording in 8 U.S.C. § 1158(b)(2)(A) provides for a denial of relief "only 'if the Attorney General determines that' a mandatory bar applies[.]" ECF No. 44 at 35. Plaintiffs contrast this language with § 1158(b)(1)(A) which states that "[t]he Secretary of Homeland Security or the Attorney General" may grant asylum to an alien. *Id.* Plaintiffs point to 8 U.S.C. § 1103(g)(1) to support their assertion that in 2002, when DHS was created, the authority to apply mandatory bars was exclusively exercised by immigration judges in the Department of Justice. *Id*. at 36. Thus, "that authority did not transfer to, and cannot be exercised by, DHS." *Id*.

As Defendants discussed in their Motion, this reading that only the Attorney General may consider the application of the mandatory bars, and an asylum officer cannot, is peculiar and unavailing. ECF No. 42 at 32. This reading would never allow USCIS asylum officers to deny affirmative asylum applications on a security-related ground, and it would mean that DHS would not have to provide notice to aliens of the privilege of counsel and the consequences of filing a frivolous asylum application as they are currently required to do. *See id*.

Plaintiffs' claim that only immigration judges could apply mandatory bars before the creation of DHS, *see* ECF No. 44 at 36, is demonstrably false. The current regulations, which were adopted by the former INS and EOIR after the passage of IIRIRA in 1997 explicitly provide that "[a]n immigration judge *or asylum officer* shall not grant asylum to any applicant who filed his or her application before April 1, 1997," and is subject to one of the mandatory bars. *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10,312, 10,342 (Mar. 6, 1997) (codified at 8 C.F.R. § 208.13(c)(2)). And for applications filed after April 1, 1997 (the effective date of IIRIRA), former INS and EOIR adopted regulations clearly stating that "an applicant shall not qualify for asylum" if subject to one of the mandatory bars without stating that such bars only applied before immigration judges. *Id.* (codified at 8 C.F.R. § 208.13(c)(1)). The above-quoted language remains unchanged in both 8 C.F.R. §§ 208.13(c) (regulations governing DHS) and 1208.13(c) (regulations governing EOIR). Even the very first asylum regulations adopted in 1980, which originally adopted the mandatory bars versions of which Congress later adopted by statute,[3] explicitly provided for application of those then-newly adopted regulatory bars by INS. *Aliens and*

---

[3]     *See Securing the Border*, 89 Fed. Reg. 48,710, 48,734 (June 7, 2024) (discussing the history of bars to asylum eligibility).

*Nationality; Refugee and Asylum Procedures*, 45 Fed. Reg. 37,392, 37,392–93 (June 2, 1980) (adopting bars applied by the INS at 8 C.F.R. § 208.8(f)(1)).

Additionally, Plaintiffs' argument ignores 8 U.S.C. § 1103(a)(3), which authorizes the Secretary of Homeland Security to "establish such regulations . . . and perform such other acts as he [or she] deems necessary for carrying out his [or her] authority under the provisions of this chapter." Under the INA, DHS has the authority to not only adjudicate asylum applications, but also to conduct credible fear interviews, to make credible fear determinations in the expedited removal context, and to establish procedures for further consideration of asylum applications after an individual is found to have a credible fear. 89 Fed. Reg. 103,370 (Dec. 18, 2024); *see* 8 U.S.C. § 1103(a)(1), (3); 8 U.S.C. § 1158(b)(1)(A), (d)(1), (d)(5)(B); 8 U.S.C. § 1225(b)(1)(B); 6 U.S.C. § 271(b)(3) (providing for the transfer of the Commissioner of Immigration and Naturalization's functions relating to adjudication of asylum and refugee applications to the Director of the Bureau of Citizenship and Immigration Services, now USCIS); 6 U.S.C. § 557 (providing that references to any officer from whom functions are transferred under the Homeland Security Act ("HSA") are to be understood as referring to the Secretary of Homeland Security). "Within DHS, the Secretary has delegated some of those authorities to the Director of USCIS." 89 Fed. Reg. 103,371 (Dec. 18, 2024). Relevant here, USCIS asylum officers conduct credible fear interviews, make credible fear determinations, and determine whether an alien's asylum application should be approved. *See* DHS, Delegation to the Bureau of Citizenship and Immigration Services, No. 0150.1 (June 5, 2003); 8 C.F.R. §§ 208.2(a), 208.9, 208.14(b), 208.30(b), (e)(6)(i), (e)(8). All these decisions are subject to review by a supervisory asylum officer.

However, this delegation to asylum officers does not extinguish the role of immigration judges. Immigration judges within EOIR still have the final decision when an alien requests review

of the asylum officer's negative credible fear determination. Consequently, the Rules do not violate

the INA, as the delegation of powers to DHS and USCIS has been authorized by Congress. Thus,

Plaintiffs have failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

### C. Asylum officers rely on more than just their "predictions" in applying the DHS Bars Final Rule.

In a credible fear interview, the mandatory bars will only be considered if the alien "appears

to be subject" to one of them. 8 C.F.R. § 208.30(e)(5)(ii). If the alien does appear to be subject to

a mandatory bar, then the asylum officer determines whether there is a sufficient likelihood that

"in a proceeding on the merits, the alien would be able to establish by a preponderance of the

evidence that such bar(s) do not apply." *Id*.

In their opposition, Plaintiffs grossly downplay the burden required to make a negative

credible fear determination. ECF No. 44 at 37–39. Instead, Plaintiffs claim that asylum officers

base their findings on "[a] preliminary prediction" and that the Rules allow Defendants to apply a

"standard significantly lower" than the one prescribed by Congress. *Id*. at 38. Plaintiffs further

assert that the DHS Bars Final Rule is also shielded from appellate review, and that the alien has

no opportunity to collect or present evidence. *Id*.

First, the standard under the DHS Bars Final Rule, 89 Fed. Reg. at 103,370, is consistent

with the standard prescribed by Congress in the expedited removal statute 8 U.S.C. § 1225(b)(1)

("[T]he term 'credible fear of persecution' means that there is a significant possibility, taking into

account the credibility of the statements made by the alien in support of the alien's claim and such

other facts as are known to the officer, that the alien could establish eligibility for asylum[.]"). 8

U.S.C. § 1225(b)(1)(B)(v); *see* 89 Fed. Reg. at 103,385 (discussing § 1225(b)(1)(B)(v) and finding

that "It follows that when considering whether a noncitizen has a significant possibility of

19

establishing eligibility for asylum, an AO may consider factors that would render the noncitizen ineligible for asylum.").

Second, the DHS Bars Final Rule requires asylum officers to consider the testimony and other evidence that is available to them to determine if "there is not a significant possibility that, in a proceeding on the merits, the alien would be able to establish by a preponderance of the evidence that such bar(s) do not apply." 8 C.F.R. § 208.30(3)(ii)(A). While Plaintiffs argue that an alien has no opportunity to collect or present evidence at the credible fear interview, as stated above, documentary evidence is not required, and instead, the alien's oral testimony alone can be sufficient. *See* 89 Fed. Reg. at 103,375. Additionally, Plaintiffs have not demonstrated that asylum officers cannot assess whether a "significant possibility" of eligibility exists based on "the credibility of the statements made by the alien" and "such other facts as are known to the officer." 8 U.S.C. § 1225(b)(1)(B)(v).

### VII.    Defendants' assertion that the Rules are not arbitrary or capricious is not premature because the question is purely legal.

In a final attempt to overcome dismissal, Plaintiffs contend that Defendants' argument that the Rules are not arbitrary or capricious is premature and instead requires the full evidentiary record for the Court to make a determination. *See* ECF No. 44 at 39–41; *see also* ECF No. 42-1 at 34–36. However, in this matter Defendants simply seek dismissal of Plaintiffs' claims under Rules 12(b)(1) and 12(b)(6), which are properly decided on a motion to dismiss. Defendants' Motion specifically focuses on several threshold jurisdictional arguments that undisputedly do not require review of the entirety of the administrative record. Instead, Plaintiffs ask the Court to bypass review pursuant to Rule 12(b) altogether and proceed directly to summary judgment proceedings on the administrative record. However, when an agency action is challenged, "[t]he entire case on review is a question of law, and only a question of law." *Marshall Cnty. Health Care Auth. v.*

*Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). "And because a court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching the merits at the 12(b)(6) stage." *Id*. Here, Defendants did not introduce any evidence into the record that would normally convert a motion to dismiss into a motion for summary judgment. *See* ECF Nos. 42, 42-1; Fed. R. Civ. P. 12(d). Instead, Defendants' motion to dismiss relied solely on the language and information within the Rules themselves. As such, this Court can correctly decide that question on a 12(b)(6) motion and not convert Defendants' Motion to Dismiss into a motion for summary judgment. Consequently, this Court should reject Plaintiffs' unsupported assertion that the full administrative record is necessary to resolve the instant Motion.

Lastly, Plaintiffs again assert that the Rules "clearly 'rest[] on a false factual premise[,]" that the Rules limit review of mandatory bars to circumstances where there is "easily verifiable evidence" that a bar applies. ECF No. 42 at 42; *see* ECF No. 23 at 22, 24. As Defendants explained in prior briefing, Plaintiffs' argument is based on a "faulty premise—that 'the regulations instruct asylum officers to consider mandatory bars whenever it 'appears' that one might apply." ECF No. 25 at 25–26. Instead, the Rules state that asylum officers "*may* consider the applicability of such bar(s)," thus providing asylum officers discretion. *See id*. at 26 (citing 8 C.F.R. § 208.30(e)(5)(ii). "The preamble explains how DHS expects this discretion to be exercised—that is, where there is 'easily verifiable evidence.' 89 Fed. Reg. at 41,351." *Id*. Consequently, the text of the Rules does not in any way conflict with the preamble, as Plaintiffs claim. In sum, Plaintiffs' Complaint should also be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

Plaintiffs have raised no arguments in their Opposition that effectively counter the points Defendants raise in their Motion to Dismiss. *See* ECF No. 42-1. Accordingly, this Court must grant Defendants' Motion and dismiss Plaintiffs' Complaint pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated: September 26, 2025

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ANTHONY P. NICASTRO
*Acting Director*

GLENN A. GIRDHARRY
*Acting Deputy Director*

WILLIAM C. SILVIS
*Assistant Director*

*/s/ Cara E. Alsterberg*
CARA E. ALSTERBERG
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4667
Email: Cara.E.Alsterberg@usdoj.gov

SHELBY WADE
*Trial Attorney*

*Counsel for Defendants*