**DECLARATION OF RODOLFO ALTILLO,**
**THE REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL**
**SERVICES**

I, Rodolfo C. Altillo, certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2. I serve as the Managing Attorney for the Asylum Access Services (AAS) team at the Refugee and Immigrant Center for Education and Legal Services (RAICES). I have held that role since July 2025. Prior to joining RAICES, I worked at Kids in Need of Defense (KIND) from 2017-2025, providing *pro bono* immigration legal services. I have been licensed to practice law in the State of Texas since December 2020 and in the State of Maryland since December 2017. I am an attorney in good standing in both states.

3. In my current role as the Managing Attorney for AAS, I oversee direct service work that includes, among other things, providing free legal services to detained individuals and families facing expedited removal from the United States, as well as to people seeking asylum and related protections, at the Dilley Immigration Processing Center in Dilley, Texas (Dilley) and the Karnes County Immigration Processing Center in Karnes, Texas (Karnes).

4. RAICES is a 50l(c)(3) nonprofit, non-partisan organization headquartered in San Antonio, Texas. As a humanitarian aid organization serving immigrant, refugee, and asylum-seeking people and families, RAICES prioritizes access to free and low-cost immigration legal aid, social services, and rights advocacy. RAICES provides a range of immigration-related services to individuals who are in detention, or who are continuing to fight their cases following release, and endeavors to serve as many noncitizens as possible.

5. As discussed in detail below, RAICES has and will continue to experience substantive harm from the DHS Rule titled *Application of Certain Mandatory Bars in Fear Screening*, 89 Fed. Reg. 103,370 (Dec. 18, 2024) and the EOIR Rule titled *Clarification Regarding Bars to Eligibility During Credible Fear and Reasonable Fear Review*, 89 Fed. Reg. 105392 (Dec. 27, 2024) (the Rules).

### RAICES's Mission and Work

6. Founded in 1986 as the Refugee Aid Project by community activists in South Texas, RAICES has grown to become an expansive immigration legal services provider in Texas. With offices in Austin, Corpus Christi, Dallas, Houston, and San Antonio, RAICES is a frontline organization that combines expertise developed from the daily practice of immigration law with a deep commitment to advocacy. Its staff includes

1

approximately 140 advocates, including attorneys, legal assistants, social workers, and support staff.

7. Since RAICES became a Department of Justice (DOJ)-accredited legal services agency in 1993, RAICES's staff, volunteers, and *pro bono* attorneys have counseled and represented thousands of noncitizens throughout Texas. RAICES offers a wide array of legal services. The scope of RAICES's services includes filing "affirmative" asylum applications, which can be submitted to U.S. Citizenship and Immigration Services (USCIS) by noncitizens who are not in removal proceedings. It also includes representing noncitizens—including adults, children, and families—in regular removal proceedings under 8 U.S.C. § 1229a and in bond proceedings before the Executive Office for Immigration Review (EOIR) immigration courts and the Board of Immigration Appeals (BIA). In regular removal proceedings, also known as defensive proceedings, RAICES represents people seeking asylum, withholding of removal, and protection under the Convention Against Torture (CAT), among other forms of relief from removal. RAICES's defensive legal representation also extends to the federal courts, including the United States Court of Appeals for the Fifth Circuit and the Supreme Court.

8. In addition, RAICES provides services to hundreds of people in expedited removal proceedings, including those screened by USCIS asylum officers through the credible and reasonable fear processes. As of the date this declaration is executed, the team consists of one managing attorney, one supervising attorney, one supervising legal assistant, three staff attorneys, one accredited representative, four legal assistants, and two data entry clerks. AAS currently provides legal aid, including representation in expedited removal proceedings, to individuals detained at Dilley and Karnes.

9. In 2025, the AAS team provided legal services to more than 1,000 individuals in ICE detention, including minors detained as part of family units—an average of 20 different people served each week. Legal representatives and/or legal assistants with the AAS team prepared 38 individuals for credible or reasonable fear interviews, and represented 65 individuals in Immigration Judge (IJ) reviews of adverse credible or reasonable fear decisions.

## The Rules Harm RAICES and Interfere with Our Ability to Continue Our Work

10. RAICES anticipates that the majority of contemplated harms resulting from the Rules will manifest in the future. While the Rules took effect on December 27, 2024, and January 17, 2025, President Trump issued a proclamation on January 20, 2025, that effectively closed the border to asylum seekers and suspended the removal process (including credible and reasonable fear interviews) for any person who entered the United States after January 20, 2025. The United States Court of Appeals for the District of Columbia Circuit recently held the proclamation to be unlawful, but the decision has not yet taken effect. *See RAICES v. Mullin*, No. 25-5243, 2026 WL 1110616 (D.C. Cir. Apr. 24, 2026). Therefore, the number of individuals in the credible fear process served by RAICES has decreased significantly. However, the Rules still remain in effect. Thus, when the D.C. Circuit's decision goes into effect, the Rules will quickly begin to

2

adversely impact individuals in the credible or reasonable fear process and the organizations that serve those individuals, like RAICES.

11. Credible or reasonable fear interviews by asylum officers are typically an early-stage screening that occurs shortly after a noncitizen comes into the country. The Rules permit asylum officers to apply mandatory bars to asylum and withholding of removal during the credible fear or reasonable fear interview, before an individual ever applies for asylum or withholding of removal. Under the Rules, asylum officers are able to base a negative fear determination on the apparent applicability of a mandatory bar. The mandatory asylum bars include the persecutor bar, the particularly serious crime bar, the serious non-political crime bar, the terrorism-related bars, and the national security bar. Whether these bars apply in an individual case requires a fact- and evidence-intensive inquiry.

12. Prior to the implementation of the Rules, asylum seekers in removal proceedings generally had time and opportunity to gather and submit evidence needed for an immigration judge to determine the applicability of the mandatory bars based on a full record. But individuals escaping persecution in their home countries often flee without their personal effects, thereby yielding many cases where individuals do not have the requisite evidence while detained to rebut an asylum officer's early application of the mandatory bars to their case. As a result, the number of individuals who are wrongfully ordered removed in the expedited removal process will increase. Further, application of the Rules will mean that meritorious protection claims will be denied, individuals may be erroneously barred from asylum and other humanitarian relief, and some individuals may even be returned to the very persecution they fled in their home country.

13. As a result of the Rules and the recent *RAICES v. Mullin* decision, RAICES is currently drafting a legal bulletin, training, and written materials to train the AAS staff to screen for mandatory bars issues during a relief intake and adequately prepare clients for their interviews. Additionally, RAICES anticipates that application of the mandatory bars during the credible and reasonable fear processes will require staff to conduct lengthier intakes to assess the impact of the Rules on individual cases. Moreover, if the general intake process leads a legal assistant to suspect that the mandatory bars apply to a specific case, RAICES anticipates those cases will require an additional intake with a supervisory AAS attorney who can assess the facts and the potential applicability of the mandatory bars and, where necessary, advise the client on how to address the mandatory bars issue during their credible or reasonable fear interview.

14. As a result of the Rules and the recent *RAICES v. Mullin* decision, RAICES is updating its materials to educate people in ICE detention centers about their legal rights, the impact of the Rules, and how to prepare for credible and reasonable fear interviews. RAICES is also updating its Know Your Rights presentations, interview protocols, and interview preparation materials.

15. After the *RAICES v. Mullin* decision takes effect, RAICES anticipates it will see a dramatic increase in the number of credible fear and reasonable fear interviews, and that

3

the Rules will require additional questions and time for each RAICES service recipient. Consequently, capacity will diminish and RAICES will have to reduce the total number of intakes, sessions with clients to prepare for their interviews, and representation during interviews.

16. RAICES also anticipates that the Rules will require it to divert resources from other programs to account for the increased time, procedures, and staffing needed to prepare people for their credible or reasonable fear interviews. To the extent that becomes necessary, RAICES anticipates it would have to divert resources from services underwritten in whole or in part by unrestricted funding, including affirmative legal representation and litigation on behalf of individuals harmed by federal immigration policy.

17. The Rules will additionally cause harm to individuals throughout the entire credible fear process. For the *pro se* service recipients assisted by RAICES, the Rules necessitate highly technical legal support prior to credible or reasonable fear interviews. While these preparations have been historically handled by both legal representatives and legal assistants, the Rules' complexity mandates that only attorneys carry out this task. Consequently, this shift will notably reduce the RAICES AAS team's capacity and the volume of *pro se* individuals the team can support. Furthermore, attorneys will need to dedicate substantially more time to each service recipient's interview preparation due to the Rules' complicated nature.

18. The Rules will decrease the number of individuals to whom RAICES can provide direct representation during their credible or reasonable fear interviews because RAICES will be forced to reallocate additional resources to interview preparation for *pro se* individuals.

19. Given the anticipated increase in negative fear determinations resulting from the Rules, RAICES expects a heightened demand for legal representation during IJ reviews, a specific adjudicatory process restricted to assessing the validity of the asylum officer's finding. This will require RAICES to divert its limited resources from other substantive programs. As noted above, to the extent that becomes necessary, RAICES anticipates it would have to divert resources from services underwritten in whole or in part by unrestricted funding, including affirmative legal representation and litigation on behalf of individuals harmed by federal immigration policy.

20. Additionally, the Rules will lead to an increased need for RAICES to represent clients in petitions for review before the Fifth Circuit Court of Appeals. As asylum officers and immigration judges apply the Rules to bar individuals from asylum and order them removed following reasonable fear interviews, their only recourse will be to seek review of their removal orders before the Fifth Circuit Court of Appeals via a petition for review.

4

21. In short, the Rules will substantially restrict RAICES's capacity to execute its core activities of providing legal counsel for people pursuing asylum or other humanitarian relief from removal, reduce the total number of intake interviews RAICES conducts, reduce direct support and legal representation of individuals and families,, decrease the volume of *pro se* individuals RAICES supports, diminish the number of individuals RAICES represents during credible and reasonable fear interviews, force RAICES to divert resources from affirmative legal representation and litigation, and thereby fundamentally undermine the organization's mission.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of June, 2026 in Austin, Texas.

**Rodolfo C. Altillo, Esq.**

5